IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| United States of America, ) | CR 15-00883-TUC-JAS (LAB) |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| vs. ) |  |
| Mauro Fortino Flores-Villareal, ) |  |
| Defendant. ) |  |

The District Court referred this case to the Magistrate Judge for a hearing on the defendant's motion to suppress evidence. (Doc. 18)  The defendant, Mauro Fortino Flores-Villareal, argues that the evidence obtained from his satchel must be suppressed because it was discovered after a warrantless search, in violation of his Fourth Amendment right against unlawful searches and seizures.

An evidentiary hearing was held on October 19, 2015.  United States Border Patrol (USBP) Agents Brian Fletcher, Daniel O'Keefe and David Ponce testified.  USBP Agent Rebecca Madrid was released without testifying after the parties stipulated to her testimony, which was unrelated to this motion.  Government's Exhibits 1 through 8, 10 and 11were admitted into evidence.  Defendant's Exhibits 100 through 104 were admitted.[1]

**Charge:**

The defendant was initially charged in a two count indictment with aiding and abetting

---

[1] Defendant's Ex. 101 is identical to Gov't Ex. 5. Ex. 102 is identical to Ex. 8. Ex. 103 is identical to Ex. 11. Ex. 104 is identical to Ex. 11.

1  possession with intent to distribute and conspiracy to possess with intent to distribute a
2  Schedule I **or** Schedule II controlled substance. (Doc. 5).  On 9/30/15 the defendant was
3  charged in a two count superseding indictment with the same offenses but the word "or"
4  between the phrases "Schedule I" and "Schedule II" was replaced with the word "and". (Doc.
5  23).  On 10/7/15 the defendant was charged in a second superseding indictment with the
6  same two counts, with the addition of the phrase "a detectable amount" in each charge,
7  inserted before the phrase "of a Schedule I and Schedule II controlled substance".  In all
8  three indictments the first counts allege that the defendant violated Title 18 U.S.C. § 2 and
9  Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). All count twos cite Title 21 U.S.C. §§ 841(a)(1)
10 and 841(b)(1)(C).

**Motion to Suppress:**

The defendant, Mauro Fortino Flores-Villareal, argues his Fourth Amendment rights were violated when, upon his arrest, his satchel was taken from him and searched without a warrant or his consent. The government responds that no search warrant was required because the defendant abandoned his property when he fled from Agent Fletcher after being handcuffed and told not to move.  Alternatively, even if the search was unlawful, the evidence is admissible under the inevitable discovery rule because the Border Patrol has a written policy that requires all personal property entering the facility be searched for safety reasons. (Ex. 6).

The Court concludes that the defendant abandoned the satchel, allowing the government to search it without a warrant. Alternatively, if the search was unlawful, the evidence should be admitted based on the inevitable discovery rule.  The evidence would have been discovered at the Border Patrol station when, pursuant to written national policy, the bag would be searched before entering the facility. The evidence should be admitted at trial.

**EVIDENCE:**[2]

*Brian Fletcher*

Brian Fletcher testified that when he originally apprehended the defendant on top of a hill in Gu Vo on 4/16/15, the defendant had a satchel on his person. Agent Fletcher removed the satchel before he handcuffed the defendant behind his back. He sat the defendant in an open area, set the satchel down next to the defendant and asked air support to keep watch over him while Agent Fletcher turned to sweep the area for people or weapons. Almost immediately the defendant ran, leaving the satchel behind.

About an hour later the defendant was taken back into custody. Agents Fletcher and O'Keefe returned to the hilltop. They retrieved the satchel and looked inside it, fearing that it might contain a weapon. The satchel contained a radio battery and some prescription medicine. Agent Fletcher was unable to describe the satchel except to say that it was smaller than a backpack, about the size of a purse. No photos were taken.

Several hours later the agents returned to the Ajo Border Patrol station. They questioned the defendant about the contents of the satchel. The defendant never asked to have his bag back. The defendant did not consent to the search of the bag and he made no statement indicating that he wished to abandon the bag.

Border Patrol policy is to search every bag that is brought into the station. There is no discretion on the part of the agents. The satchel in this case was large enough to contain a pistol or a knife. A more thorough search was conducted at the station. Agent Fletcher has found weapons in bags and on mountaintops. He has also heard of other agents finding weapons in similar circumstances. Detainees generally leave the Ajo station within 24 hours. Their property goes with them. Agent Fletcher assumes that if a person is deported his property goes with him to the border and the agents cannot allow firearms to go into Mexico.

---

[2] The rendition of facts set forth in the Report and Recommendation regarding the defendant's Motion to Suppress Statements is incorporated herein. Only testimony relevant to the Motion to Suppress Evidence is stated herein.

1 *__Daniel O'Keefe__*

2 Daniel O'Keefe testified that on 4/16/15, after the defendant was reapprehended, he and
3 Agent Fletcher returned to the hilltop and retrieved the defendant's satchel. The agents spent
4 20 to 25 minutes searching the site. No weapons or drugs were found. The satchel was taken
5 back to the Border Patrol station. All bags must be searched when entering the station. The
6 agents have no discretion. The satchel was large enough to hold a pistol or a knife. Other
7 agents have found scouts in possession of weapons.

8 *__David Ponce__*

9 David Ponce testified that he searched the satchel at the Border Patrol station pursuant to
10 a written national policy. Policy is that all personal property that enters the facility is
11 extensively searched, primarily for security reasons. Also, the next facility where the
12 defendant and his property would be transferred forbids perishable items and lighters. Agent
13 Ponce has never requested a warrant before searching property at the station and has not
14 heard of that being done. He is aware that other agents have found weapons, drugs,
15 flammable items and prescription medications in detainees' personal property. Searches are
16 conducted primarily for the safety of the facility and the officers. If the property is not
17 contraband it is returned to the owner.

18 Agent Ponce was at the station typing his report when he saw the satchel near the
19 computer. He searched the bag. It was a small, black, cross body bag with a number of
20 pockets. He did not know that the bag had previously been searched. The bag was large
21 enough to hold a pistol. Agent Ponce found prescription medication in the defendant's name,
22 toiletries and a pocket with a radio battery. The defendant did not give consent to search his
23 bag.

24 *__Exhibits__*

25 Exhibit 102 (and 8) is a receipt for property with Defendant Flores-Villareal's name
26 which lists the bag as his property. Exhibit 101 (and 5 and 7) is a notice of abandonment
27 signed by the defendant on 4/17/15. Exhibit 100 is a baggage check with the defendant's

28

- 4 -

1  name but it does not list any property.

2  **DISCUSSION**:

3     The defendant argues that the warrantless search of his bag was in violation of his Fourth
4  Amendment rights because it did not fall into any of the exceptions to the warrant
5  requirement, and the defendant had a reasonable expectation of privacy in the bag.
6  Defendant Flores-Villareal cites the Court to *U.S. v. Monclavo*, 622 F.2d 1285 (9th Cir. 1981),
7  for the proposition that the search was not incident to an arrest because the bag wasn't
8  searched until more than an hour after it was taken from him and the defendant was
9  recaptured more than a mile away from where the bag was searched on the hilltop. The
10 government states that it is not relying on the search incident to arrest exception, although
11 it presented that argument in its supplemental briefing. (Doc. 46).

12     ***Abandonment***

13     The defendant argues that he did not abandon his bag because it was seized when he was
14 arrested. His position is that once it was seized, his flight from the officer was not sufficient
15 to indicate an intent to abandon the bag. The defendant did not deny ownership. On the
16 contrary, although the statement was taken in violation of *Miranda*, the defendant claimed
17 ownership when questioned at the Border Patrol station. He was given a baggage claim
18 check. He only signed the abandonment of property form the following day, well after the
19 bag had been searched, twice. The fact that the government presented him with the form is
20 an acknowledgment that the defendant had not yet abandoned the bag.

21     The government responds that the defendant was lawfully detained. His bag was legally
22 seized. Although it is undisputed that the defendant owned the bag, when he fled he left the
23 bag behind, demonstrating an intent to abandon his property. The government referred to the
24 abandonment of property form as further evidence that the defendant intended to abandon
25 the bag. It also claims the bag was properly searched at the original arrest site based on
26 safety concerns.

27     The Fourth Amendment to the United States Constitution guarantees people the right to
28

1 be free from unreasonable searches and seizures. U.S.C.A. Const. Amend. 4. A warrantless
2 search is per se unreasonable under the Fourth Amendment, subject to a few specifically
3 established exceptions. *Katz v. U.S.*, 389 U.S. 347, 357 (1967). One of the exceptions is that
4 a warrantless search of abandoned property does not violate the Fourth Amendment. *Abel*
5 *v. U.S.*, 362 U.S. 217, 241 (1960).

The Court must determine whether the defendant abandoned his property, by considering the totality of the circumstances, including physical relinquishment and denial of ownership. *U.S. v. Nordling*, 804 F.2d 1466 (9th Cir. 1986). Even where a person retains a property interest in the item searched, he may still be found to have abandoned the property and his reasonable expectation of privacy. *U.S. v. Wilson*, 472 F.2d 901, 903 (9th Cir. 1972). Objective standards are used to determine if a person intends to retain a privacy interest. *U.S. v. Kendall*, 655 F.2d 199, 201 (9th Cir. ), *cert. denied*, 455 U.S. 941 (1981). The Court looks to the person's words, conduct and other objective facts to decide whether property has been abandoned. *U.S. v. Jackson*, 544 F.2d 407, 409 (9th Cir. 1976).

In the present case, Defendant Flores-Villreal was lawfully detained. His satchel was lawfully seized. There is no evidence that he relinquished his property rights in the bag before it was searched. However, the Court finds that he abandoned his reasonable expectation of privacy when he ran and left the satchel unattended in the desert. The bag was placed next to him by Agent Fletcher. Although it may have been difficult for the defendant to retrieve the bag and run with it, since his hands were handcuffed behind his back, the alternative would have been to remain with the bag. The search on the hilltop was lawful.

### ***Inevitable Discovery***

The defendant argues that inevitable discovery does not justify admissibility of evidence in this case because the agents had sufficient time and opportunity to secure a warrant before the bag was searched. The bag could have been placed with the property or evidence custodian as a single unit without being searched. There were no exigent circumstances.

1  The government's position is that the bag was properly searched at the Border Patrol 2 station pursuant to written, national policy which requires that all property entering the 3 facility be searched for safety reasons. It was a valid inventory search.

4  When there is an unlawful search, an exception to the exclusionary rule is the inevitable 5 discovery doctrine. *U.S. v. Andrade*, 784 F.2d 1431 (9th Cir. 1986). The exception applies 6 where the prosecution proves by a preponderance of the evidence that the items seized by 7 unlawful means would have inevitably been discovered by a lawful means, such as an 8 inventory search. *Id*. at 1433. The scope of a permissible inventory was discussed by the 9 Court in *Illinois v. Lafayette*, 462 U.S. 640 (1983). The Supreme Court held that it is 10 unreasonable to expect the police to decide which items may be searched and which must be 11 inventoried as a unit, allowing all items to be searched pursuant to a standard inventory 12 policy. *Id*. at 648.

13  In the present case the agents all testified that there is a written, national Border Patrol 14 policy which requires that all property entering the station be searched, primarily for safety 15 concerns. The agents have no discretion. Even if the defendant were found not to have 16 abandoned his satchel, it would have been thoroughly searched and inventoried when it 17 arrived at the Ajo station. The contents would inevitably have been lawfully discovered. The 18 evidence should be admitted at trial.

19 **RECOMMENDATION:**

20  In view of the foregoing, it is recommended that, after its independent review of the 21 record, the District Court **DENY** the motion to suppress evidence. (Doc. 18).

22  Defense counsel may serve and file written objections within 14 days. If objections are 23 not timely filed, the party's right to de novo review may be waived. No reply to objections 24 shall be filed unless leave is granted from the District Court.

25  DATED this 26th day of October, 2015.

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge

- 7 -