IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | CR 15-00883-TUC-JAS (LAB) |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| vs. ) | |
| ) | |
| Mauro Fortino Flores-Villareal, ) | |
| Defendant. ) | |
| ) | |

The District Court referred this case to the Magistrate Judge for a hearing on the defendant's motion to suppress statements. (Doc. 17) The defendant, Mauro Fortino Flores-Villareal, argues that his post-arrest statements must be suppressed because they were taken in violation of *Miranda* and were coerced and involuntary, in violation of the Fifth and Sixth Amendments to the United States Constitution.

An evidentiary hearing was held on October 19, 2015. United States Border Patrol (USBP) Agents Brian Fletcher, Daniel O'Keefe and David Ponce testified. USBP Agent Rebecca Madrid was released without testifying after the parties stipulated that Agent Madrid would testify that she advised Defendant Flores-Villareal of his Miranda rights at the Ajo Border Patrol Station. He invoked his right to remain silent and to have counsel present during questioning. Agent Madrid did not advise the other three agents that the defendant had invoked his rights. Government's Exhibits 1 through 8, 10 and 11were  admitted into

1 evidence. Defendant's Exhibits 100 through 104 were admitted.[1]

2 **Charge:**

3 The defendant was initially charged in a two count indictment with aiding and abetting possession with intent to distribute and conspiracy to possess with intent to distribute a Schedule I **or** Schedule II controlled substance. (Doc. 5). On 9/30/15 the defendant was charged in a two count superseding indictment with the same offenses but the word "or" between the phrases "Schedule I" and "Schedule II" was replaced with the word "and". (Doc. 23). On 10/7/15 the defendant was charged in a second superseding indictment with the same two counts, with the addition of the phrase "a detectable amount" in each charge, inserted before the phrase "of a Schedule I and Schedule II controlled substance". In all three indictments the first counts allege that the defendant violated Title 18 U.S.C. § 2 and Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). All count twos cite Title 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

**Motion to Suppress:**

The defendant, Mauro Fortino Flores-Villareal, argues his Fifth and Sixth Amendment rights were violated because during a custodial interrogation at the Ajo Border Patrol Station he was advised of his *Miranda* rights, invoked and was then questioned by agents. He claims that his post-invocation statements were not voluntary because they were taken in violation of *Miranda* and therefore are not admissible at trial for any purpose.[2]

The government concedes that the statements were taken in violation of *Miranda* and does not intend to use the statements in its case-in-chief. It argues, however, that the statements were voluntary and may be used during trial to impeach the defendant if he testifies contrary to those statements.

---

[1] Defendant's Ex. 101 is identical to Gov't Ex. 5. Ex. 102 is identical to Ex. 8. Ex. 103 is identical to Ex. 11. Ex. 104 is identical to Ex. 11.

[2] The defendant was given *Miranda* warnings and answered questions prior to being transported to the Border Patrol station. Those statements are not contested.

- 2 -

1  The Court concludes that the statements were voluntary and should be admitted at trial for
2  impeachment purposes only.

3  **EVIDENCE:**

4  ***Brian Fletcher***

5  Brian Fletcher testified that he has been a Border Patrol agent for 7 years, working out of
6  the Ajo station, which includes the village and hills of Gu Vo, on the Tohono O'odam
7  Nation. The village is about 18 miles north of the international border. Agents frequently
8  encounter undocumented people on top of the Gu Vo hills, which serve as a good vantage
9  point for scouts because there is visibility 6 to 7 miles to the west and south, and 10 miles to
10 the north and the east. Agent Fletcher has never encountered a United States citizen on top
11 of the hills, nor has he heard of another agent doing so. The only reason a person would
12 climb to the top of the hills is to act as a scout for people engaged in illegal activity.

13 On 4/16/15 Agent Fletcher was on duty from noon to 10:00 p.m. He was part of the ATV
14 unit, working the area of Federal Route 1. His partner, BP Agent Daniel O'Keefe, was also
15 in the area. Agent Fletcher walked to a known drug staging area. At about 6:00 p.m. he saw
16 a person on the side of the ravine, talking on a radio. Agent Fletcher thought the person was
17 undocumented or a scout. He requested a helicopter for air support and called his partner for
18 backup.

19 When the helicopter arrived, Agent Fletcher went up the hill. He saw pots, pans, a
20 backpack, a rock hut, and someone lying under a tree with his face hidden. He approached
21 the defendant, put his hand on the defendant's back, and identified himself as a Border Patrol
22 agent. He ordered the defendant in Spanish to show his hands. The defendant understood
23 and complied with the Spanish commands. Agent Fletcher removed a satchel from the
24 defendant, which he thought might contain a weapon. He handcuffed the defendant behind
25 his back and removed his boots to be sure they did not conceal a weapon.

26 Agent Fletcher sat the defendant on the ground in an open area, asked the helicopter to
27 watch him, and went to check the hut for other people. He told the defendant not to move.
28

When Agent Fletcher looked back over his shoulder the defendant was running down the hill. Agent Fletcher chased him for over an hour. The helicopter crew kept a visual on the defendant. With help from Agents O'Keefe and Ponce the defendant was apprehended and transported to the Ajo Border Patrol station. Agent Fletcher was exhausted and has limited recollection about any interaction with the defendant after he was apprehended for the second time.

Agents Fletcher and O'Keefe returned to the original arrest site on top of the hill. They found a radio, the satchel that was removed from the defendant, beer, soda, eggs, water, pots and pans. They did not find any weapons, drugs or binoculars. Agent Fletcher searched the satchel, finding prescription medication and a radio battery. The satchel was the size of a purse, smaller than a backpack.

About 1 ½ to 2 hours later, the agents arrived at the Ajo station. They did not know that the defendant had invoked his rights in the interim. Agent O'Keefe asked the defendant if the medication belonged to him, in order to determine if he needed medication. The questions lasted for one minute or less. There was no coercion, no promises, no hesitation and the defendant did not appear to be in distress.

### ***Daniel O'Keefe***

Daniel O'Keefe testified that he has been a Border Patrol agent for 7 years, working out of the Ajo station. On 4/16/15 he was on ATV duty with Agent Fletcher. Agent O'Keefe has never discovered a United States citizen on the Gu Vo hilltops. The people are either undocumented or scouts for drug traffickers. Agent O'Keefe testified similarly to Agent Fletcher. He stated that the defendant ran for about 30 to 45 minutes before being apprehended. He also said it took about 20 minutes for him to catch up to Agent Fletcher to assist him.. The terrain is very rough in the area, consisting of desert, rocks, mountains, washes and thick brush.

When the defendant was apprehended, Agent Fletcher was exhausted. Agent Ponce advised the defendant of his rights. The defendant agreed to speak. The defendant was

1 walked down the mountain slowly, in part because his feet were wrapped in clothing. Agent
2 Negrette transported the defendant to the Ajo station. Agents O'Keefe and Fletcher returned
3 to the original arrest site to clear the area.

4 When the agents returned to the station, Agent O'Keefe asked the defendant if the
5 prescription medication was his and the defendant answered that it was. They were in the
6 processing area which is not open to the public but there are agents, other detainees and other
7 people present. All three agents were in uniforms and armed. The defendant had no trouble
8 understanding Agents Ponce and O'Keefe. He was not in any distress.

### ***David Ponce***

10 David Ponce testified that he has been a Border Patrol agent for 5 years, working out of
11 the Ajo station. On 4/16/15 he was on patrol in the Gu Vo hills with Agents Fletcher and
12 O'Keefe.. Agent Ponce was advised that Agent Fletcher apprehended someone who had run
13 from him. Agent Ponce was on an ATV and had a rough ride before getting to Agents
14 Fletcher and O'Keefe and the defendant. When he got to them it was dark. The defendant
15 was bleeding from his feet and was handcuffed in front.

16 Agent Ponce's first language is Spanish. He read the defendant his *Miranda* warnings in
17 Spanish. The defendant agreed to speak. The two had no trouble communicating. When
18 Agent Ponce returned to the Border Patrol station he asked the defendant if everything in the
19 bag that was seized from him was his. The defendant was not in any distress when he was
20 questioned. He had been in a holding cell that was about 20 feet by 10 or 15 feet. It has a
21 window, a bench, a toilet, a sink and a drinking fountain.

### **DISCUSSION**:

23 Statements that are made in response to questioning initiated by law enforcement officers
24 while a person is in custody may not be used in the government's case-in-chief unless the
25 person is first advised of his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).
26 The parties stipulated that the statements taken from the defendant at the Ajo Border Patrol
27 station were in violation of *Miranda* and cannot be used in the government's case-in-chief.

The government cites *Harris v. New York*, 401 U.S. 222 (1970), for the proposition that statements taken from the defendant in violation of *Miranda* may nevertheless be used to impeach the defendant's trial testimony if the statements otherwise satisfy legal standards of trustworthiness. In determining whether the statements were made voluntarily, the Court must consider "the totality of the circumstances." *Arizona v. Fulminante.*, 499 U.S. 279, 285 (1991).

The defendant cites *McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991) to support his argument that once an accused invokes his *Miranda* rights to remain silent and to counsel, if the police initiate questioning thereafter, the suspect's statements are presumed involuntary. The Court in *McNeil*, however, was specific in stating that the statements would then be inadmissible "as substantive evidence at trial." The Supreme Court held in *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1972) that the presence or absence of a single criterion is not controlling in determining voluntariness. All surrounding circumstances must be carefully scrutinized. *Schneckloth* set forth some of the factors to be considered, such as the accused's youth, lack of education, low intelligence, whether he was advised of his rights, length of detention, physical punishment including lack of food or sleep, and whether the questioning was repeated and prolonged.

In the present case, Exhibit 100 indicates that Defendant Flores-Villareal was 22 years old at the time of his arrest. He was advised of his rights twice. Once he waived and agreed to speak. The second time he invoked. He was in custody for several hours before he was questioned by Agent Ponce at the Ajo Border Patrol station. The questioning consisted of two questions and lasted less than a minute. The agents testified that the defendant was spoken to in Spanish and had no trouble communicating. He answered the questions without hesitation. He was not in distress. He was not threatened, coerced or promised anything. He was not handcuffed during questioning. The defendant was being held in a cell that had a window, toilet, sink, bench and drinking water. All three agents were in uniform and were armed. The defendant injured his feet when he ran handcuffed and barefoot through the

desert after being detained by Agent Fletcher.  It is unclear whether he received medical attention prior to questioning.  The agents found prescription medicine that belonged to the defendant but there was no evidence what the medication was for or whether the defendant was in need of his medication.

Based on the totality of the circumstances, the Court finds that Defendant Flores-Villareal's statements were freely and voluntarily given.  They were not extracted by threats, violence, or express or implied promises sufficient to overbear his will or critically impair his capacity for self-determination.  The statements were taken in violation of *Miranda* and should not be admissible in the government's case in chief.  However, since the statements were made voluntarily, the should be admissible to impeach the defendant should he choose to testify at trial.

**RECOMMENDATION:**

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court **GRANT** in part (case in chief) and **DENY** in part (impeachment) the motion to suppress statements. (Doc. 17).

Defense counsel may serve and file written objections within 14 days.  If objections are not timely filed, the party's right to de novo review may be waived.  No reply to objections shall be filed unless leave is granted from the District Court.

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

DATED this 26th day of October, 2015.

Leslie A. Bowman
United States Magistrate Judge